IN THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

CHRISTY BAILEY, Personal Representative
of the Estate of Jeffrey Peterson
Plaintiff-Appellee

v.

MARCUS BEALE
Defendant-Appellant

On Direct Appeal from the Eastern District of Oklahoma, Muskogee, in cause number 6:20-CV-00327-JAR, the Honorable Jason A. Robertson, presiding.

# APPELLANT'S CORRECTED OPENING BRIEF

Scott B. Wood, OBA 12536
WOOD, PUHL & WOOD, P.L.L.C.
4037 E. 49th St.
Tulsa, Oklahoma 74135
*Tel* (918) 742-0808 / *Cell* (918) 607-5946
*Attorney for Defendant-Appellant*

November 20, 2024          ORAL ARGUMENT IS REQUESTED

# TABLE OF CONTENTS

TABLE OF CONTENTS ……………………………………………….. ii-iii

TABLE OF AUTHORITIES ……………………………………….. iv-vii

STATEMENT OF PRIOR OR RELATED APPEALS …………………… 1

STATEMENT OF JURISDICTION …………………………………… 1

   A. Subject Matter Jurisdiction of the District Court …………………… 1

   B. Timeliness of Appeal ……………………………………………….. 1

   C. Appellate Jurisdiction ……………………………………………….. 2

STATEMENT OF ISSUES PRESENTED FOR REVIEW ………………… 2-3

STATEMENT OF THE CASE ……………………………………….. 4-6

STATEMENT OF THE FACTS ………………………………………… 6-9

SUMMARY OF ARGUMENTS ………………………………………… 9-11

STANDARD OF REVIEW ……………………………………………… 11-12

ARGUMENTS AND AUTHORITIES …………………………………….. 13-30

I.     THE DISTRICT COURT COMMITTED CLEAR ERROR AS
       ITS FINDINGS OF FACTS ARE INTERNALLY
       INCONSISTENT AND AFFECT THE SUBSTANTIAL
       RIGHTS OF OFFICER BEALE ……………………………….. 13-17

II.    THE DISTRICT COURT COMMITTED PLAIN ERROR BY
       FAILING TO APPLY THE LAW OF *KILGORE V.*
       *STROUD* TO ITS FINDINGS OF FACT THAT PETERSON
       HIT THE DOOR, THE DOOR HIT TIMMONS AND
       TIMMONS HIT OFFICER BEALE, THEREBY
       MISAPPLYING ITS FINDINGS OF FACTS TO THE LAW………. 17-20

III.   THE DISTRICT COURT COMMITTED CLEAR ERROR
       BY FAILING TO ANALYZE THE CLEARLY
       ESTABLISHED LAW PRONG OF QUALIFIED IMMUNITY…….  20-25

IV.    THE DISTRICT COURT COMMITTED CLEAR ERROR BY
       FINDING "THE DISPUTED CLAIM THAT OFFICER BEALE
       VIOLATED PETERSON'S CONSTITUTIONAL RIGHTS TO
       BE FREE OF A WARRANTLESS SEARCH COULD BE
       FOUND TO HAVE LED TO THE DEATH OF PETERSON
       AND THE RESULTING DAMAGES." ………………………………..  25-29

CONCLUSION …………………………………………………………………  29

STATEMENT OF COUNSEL AS TO ORAL ARGUMENT ………………..  30

CERTIFICATES …………………………………………………………………  31

ATTACHMENT OF DISTRICT COURT ORDER …………………………..  32

# TABLE OF AUTHORITIES

**CASES:**

*Ahlers v. Schebil,* 188 F.3d 365 (6th Cir. 1999) …………………………..…………15

*Anderson v. Liberty Lobby, Inc*.,
  477 U.S. 242, 250 (1986) …………………………………………………...11,12

*Attocknie v. Smith,* 798 F.3d 1252 (10th Cir. 2015) ………………………..24,26,27

*Baptiste v. J.C. Penney Co*., 147 F. 3d 1252 (10th Cir. 1998)) …………………..12

*Becker v. Bateman,* 709 F.3d 1019 (10th Cir. 2013) ………………...…………..4

*Benefield v. McDowall*, 241 F.3d 1267 (10th Cir. 2001) ………………………...12

*Bodine v. Warwick,* 72 F.3d 393 (3rd Cir. 1995) ……………………………28.29

*Blossom v. Yarbrough,* 429 F.3d 963 (10th Cir. 2005) ……………………………2

*Brower v. Cnty. of Inyo*, 489 U.S. 593 (1989) ………………………………...27,28

*Burke v. Utah Transit Auth. & Local 382*,
  462 F.3d 1253, 1258 (10th Cir. 2006) ………………………………………...12

*Cameron v. City of Pontiac, Mich.*, 813 F.2d 782 (6th Cir. 1987) ………………..26

*Carroll v. U.S.*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) ………………..24

*City of Tahlequah v. Bond,* 595 U.S. 9 (2021) ………………………………...23

*Coolidge v. New Hampshire*, 403 U.S. 443 (1971) ………………………………25

*Cortez v. McCauley*,
  478 F.3d 1108 (10th Cir. 2007) …………………………………………………16

*Cox v. Glanz,* 800 F.3d 1231 (10th Cir. 2015) ……………………………………21

*Crawford-El v. Britton,* 523 U.S. 574, 118 S.Ct. 1584 (1998) …………………...20

*Dist. Of Columbia v. Wesby ("Wesby"),*
    ---U.S.---, 138 S.Ct. 577, 199 L.Ed.2d 453 …………………………….16,23

*Distiso v. Town of Wolcott,* 352 Fed.Appx. 478 (2d Cir.2009) ……………….21,22

*Felders ex rel. Smedley v. Malcolm*, 755 F.3d 870 (10th Cir. 2014) ……………16

*Gross v. Pirtle,*
    245 F.3d 1151, 1155 (10th Cir. 2001) ………………………………….26,27

*Headrick v. Rockwell Int'l Corp.,* 24 F.3d 1272 (10th Cir. 1994) ……………18-19

*Hill v. Kemp,* 478 F.3d 1236 (10th Cir.2007) …………………………………18

*James v. Chavez*, 511 F. App'x 742 (10th Cir. 2013) …………………………...27,28

*Jeffers v. Gomez*, 267 F.3d 895 (9th Cir. 2005) ………………………………..20

*John Allen Co. v. Craig Allen Co. L.L.C.,* 540 F.3d 1133 (10th Cir. 2008) …..13, 14

*John Bad Elk v. United States*, 177 U. S. 529, 20 S. Ct. 729 (1900) ……………..24

*Jones v. State,* 508 P.2d 280 (Okla. Crim. App. 1973) …………………………...18

*Kaufman v. Higgs*, 697 F.3d 1297 (10th Cir. 2012) …………………………..15,16

*Kerns v. Bader,* 663 F.3d 117 (10th Cir. 2011) ………………………………..21-22

*Kilgore v. Stroud,* 158 Fed.Appx. 944 (10th Cir. 2005) ……………..3,10,17,19,29

*Kurtz v. Moffitt*, 115 U. S. 487, 6 S. Ct. 148 (1885) ……………………………..24

*Lowe v. Town of Fairland,* 143 F.3d 1378 (10th Cir.1998) ……………………..24

*Martinez v. Beggs,* 563 F.3d 1082 (10th Cir.2009) ………………………………4

*Maryland v. Pringle,* 540 U.S. 366, 124 S.Ct. 795 (2003) ………………………19

*McBeth v. Himes,* 598 F.3d 708 (10th Cir. 2010) ………………………………………26

*McKissick v. Yuen,* 618 F.3d 1177 (10th Cir. 2010) …………………………4-5,18

*Mecham v. Frazier,*
    500 F. 3d 1200 (10th Cir. 2007) ………………………………………………22

*Mendiola v. United States,* 994 F.2d 409 (7th Cir.1993) …………………………13

*Mitchell v. Forsyth,*
    472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) ……………………..2

*Mor-Cor Packaging Prods., Inc. v. Innovative Packaging Corp.,*
    328 F.3d 331, 336 (7th Cir. 2003) ………………………………………………14

*Nelson v. McMullen,* 207 F.3d 1202 (10th Cir.2000) ……………………………23

*Perez v. Ellington,* 421 F.3d 1128 (10th Cir. 2005)) …………………………………2

*Romero v. Fay,* 45 F.3d 1472 (10th Cir. 1995) …………………………………………16

*Sac & Fox Nation v. Norton,* 240 F.3d 1250 (10th Cir. 2001) ……………………24

*Saucier v. Katz,*
    533 U.S. 194, 121 S.Ct. 2151 (2001) …………………………………20,23

*Scott v. Harris,*
    550 U.S. 372, 377, 127 S.Ct. 1769, 1776 (2007) …………………………11-12

*Stevens v. Barnard,* 512 F.2d 876 (10th Cir.1975) ……………………………………26

*Stonecipher v. Valles,* 759 F.3d 1134 (10th Cir. 2014) …………………………..16

*Sw. Stainless, LP v. Sappington,* 582 F.3d 1176 (10th Cir. 2009) ………………14

*Thomson v. Salt Lake Cnty.,* 584 F.3d 1304 (10th Cir. 2009) ……………………21

*Trask v. Franco,* 446 F.3d 1036 (10th Cir. 2006) ……………………………...26,27

*U.S. v. Belisle*, 164 Fed.Appx. 657 (10th Cir. 2005) ……………………………22,23

*United States v. Cruz–Rodriguez,* 570 F.3d 1179 (10th Cir.2009) …………..4-5,18

*United States ex rel. Ramseyer v. Century Healthcare Corp.,*
    90 f.3d 1514 (10th Cir. 1996) ………………………………………………26

*Ute Indian Tribe of the Uintah and Ouray Reservation v. Lawrence,*
    22 F.4th 892 (10th Cir. 2022) ……………………………………………13-14

*Verdecia v. Adams*, 327 F.3d 1171 (10th Cir. 2003) ………………………………12

*Wilder v. Turner*, 490 F.3d 810 (10th Cir. 2007)…………………………………11

*York v. City of Las Cruces*, 523 F.3d 1205 (10th Cir. 2008) ……………………..16

**RULES:**

10th Cir. R. 28.2(A)(1) …………………………………………………………..2

10th Cir. R. 28.2(C)(3) …………………………………………………………..1

Fed. R. App. P. 4(a)(1)(A) ……………………………………………………….2

Fed. R. Civ. P. 56 …………………………………………………………..10,11,12

28 U.S.C. § 1291 ………………………………………………………………...2

28 U.S.C. § 1331 ………………………………………………………………...1

28 U.S.C. § 1367(a) ……………………………………………………………..1

42 U.S.C. § 1983 …………………………………………………………………1,4

Keeton et al., *supra,* § 45, at 321 …………………………………………………26

RESTATEMENT (SECOND) OF TORTS § 442B (1965) ………………………27

## DEFENDANT MARCUS BEALE'S OPENING BRIEF

Defendant-Appellant Marcus Beale ("Officer Beale") appeals from the October 13, 2023 District Court Order, denying in part his Motion for Summary Judgment. In accordance with this Court's Order of November 4, 2024, Officer Beale hereby submits his Opening Brief for the Court's consideration on appeal.

## STATEMENT OF PRIOR OR RELATED APPEALS

Pursuant to 10th Cir. R. 28.2(C)(3), Officer Beale advises the Court that there are no prior or releated appeals.

## STATEMENT OF JURISDICTION

### A. Subject Matter Jurisdiction of the District Court

Plaintiff-Appellee Christy Bailey, as the personal representative of the Estate of Jeffrey Peterson ("The Estate") brought this action against Officer Beale and other Co-Defendants in the United States District Court for the Eastern District of Oklahoma under 42 U.S.C. § 1983, alleging violations of the Decedent Jeffrey Peterson's ("Peterson") Fourth Amendment rights. [App. 15-29]. The District Court therefore properly exercised its jurisdiction under 28 U.S.C. § 1331 and 1367(a).

### B. Timeliness of Appeal

On October 13, 2023, the District Court entered an Order denying, in part, Officer Beale's Motion for Summary Judgment with regard to his claim of qualified

immunity.[1] On November 9, 2023, Officer Beale filed his Notice of Appeal. [App. Vol. 211-31]. On November 4, 2024, this Court entered its Order setting Officer Beale's deadline to file his Opening Brief and Appendix on or before November 19, 2024. Accordingly, this appeal is timely pursuant to Fed. R. App. P. 4(a)(1)(A).

### C. Appellate Jurisdiction

Although a District Court's denial of summary judgment is not generally appealable, an exception is made where, as here, the defendant is a public official asserting qualified immunity and the issue appealed is a matter of law. *Blossom v. Yarbrough*, 429 F.3d 963, 966 (10th Cir. 2005). Accordingly, this Court may properly exercise jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Upon review, this Court may reverse on an interlocutory basis, as the facts and the evidence presented do not establish a violation of Peterson's clearly established rights on the part of Officer Beale. *See Blossom,* 429 F.3d at 966 *(citing Perez v. Ellington,* 421 F.3d 1128, 1131 (10th Cir. 2005)).

### <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

1. Whether the District Court committed plain error when it found the following internally inconsistent facts:

---

[1] Pursuant to 10th Cir. R. 28.2(A)(1), the Order is attached hereto; see also App. Vol. 276-310].

a. a "significant, material factual dispute exists" as to Peterson's assault and battery of Officer Beale as to Officer Beale's claim that "Peterson slammed the door which hit Officer Beale's arm," which prevented probable cause to arrest Peterson, [App. 299-300] AND

b. "Peterson hit the door, the door hit Timmons and Timmons hit Officer Beale," which would have provided probable cause to arrest Peterson.

2. Whether the District Court committed plain error when it failed to apply the law of *Kilgore v. Stroud,* 158 Fed.Appx. 944 (10th Cir. 2005) to its findings of fact that "Peterson hit the door, the door hit Timmons and Timmons hit Officer Beale," which would have provided probable cause to arrest Peterson, and thus his entry would have been lawful.[2]

3. Whether the District Court committed clear error by failing to analyze the clearly established law prong of qualified immunity.

4. Whether the District Court committed clear error by finding that it was a question for the jury to determine if Officer Beale proximately caused the death of Peterson and the resulting damages therefrom.

---

[2] Exigent circumstances are also required but based on the District Court's ruling, if Peterson committed assault and battery on Peterson, along with his threat to treat Officer Beale like an intruder, this would have provided the requisite exigent circumstances. [App. 288-289].

**STATEMENT OF THE CASE**

This case arises out of the contentious relationship between Peterson and Timmons whereby on September 21, 2019: (1) Peterson kicked Timmons out of the apartment and kept her belongings, and (2) Officer Beale attempted to assist Timmons in retrieving her property. [App. 296-297]. The Estate asserted causes of action against Officer Beale and other officers who assisted Officer Beale, under 42 U.S.C. § 1983, and pendant state law claims, for the alleged denial of Peterson's rights for unlawful entry and excessive force. [App. 15-29]. Officer Beale and the other officers brought separate motions for summary judgments.[3] [App. 37-115]. Officer Beale argued, in part, that he was entitled to qualified immunity with regard to **any**[4] of The Estate's § 1983 claims as well as the pendant state law claims. [App. Id.].

---

[3] The District Court granted qualified immunity to the other defendant officers for Plaintiff's unlawful entry claims and Plaintiff's excessive force claims. [App. 10-14]. Therefore, this appeal involves only Officer Beale, so the Appendix is limited to the briefing related to his summary judgment motion.

[4] The Estate claimed that Officer Beale violated his First Amendment constitutional rights, but Plaintiff failed to carry its burden to show that Officer Beale violated his clearly established First Amendment constitutional rights. *Becker v. Bateman,* 709 F.3d 1019, 1022 (10th Cir. 2013)("When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established). *citing Martinez v. Beggs,* 563 F.3d 1082, 1088 (10th Cir.2009). In turn, the District Court did not address this claim. [*See App. 277-310*]. Considering the Estate did not appeal the District Court's ruling (or lack thereof) as to the First Amendment claim, the Estate forfeited any argument thereto on appeal. *McKissick v. Yuen,* 618 F.3d 1177 (10th Cir. 2010)( Failure to develop arguments adequately in

The District Court denied Officer Beale's summary judgment motion as to the alleged § 1983 claim of unlawful entry based on the fact that a "material, disputed factual issue" remained as to whether Officer Beale had probable cause to arrest Peterson for slamming his arm in the door of the apartment, without analyzing clearly established qualified immunity. [App. 295-301]. The District Court granted qualified immunity to the other officers for the alleged § 1983 claim of alleged unlawful entry, finding they relied on statements of Officer Beale. As to the § 1983 excessive force claims, the District Court granted qualified immunity to Officer Beale and the other officers, finding that Peterson's actions[5] went beyond mere efforts to defend himself and established him as the aggressor once the officers entered the apartment." The District Court further found as to Officer Beale "the fact remains that the disputed claim that Officer Beale violated Peterson's constitutional right to be free of a warrantless search could be found to have lead [sic] to the death of Peterson and the resulting damages. Such disputes are in the exclusive province

the district court either forfeits (if the failure was unintentional) or waives (if the failure was intentional) them in that court. Further, failure to appeal arguing plain error, precludes appellate review. *Id. citing United States v. Cruz–Rodriguez,* 570 F.3d 1179, 1183–84 (10th Cir.2009).

[5] Peterson "immediately physically confronted the Officers. All evidence indicates that Peterson punched, grappled with, and attempted to disarm Officer Meeks while Officer Canada deployed a taser in an effort to end Peterson's altercation with Officers Meeks and Beale." [App. 292].

of the jury as factfinder and not appropriately resolved on summary judgment under the facts presented in this case." [App. 299].

Officer Beale appeals the District Court's ruling as to the unlawful entry claim. Officer Beale contends the District Court committed plain error by its inconsistent findings of facts and its finding that Officer Beale did not have probable cause to arrest Peterson, as the findings of facts by the District Court demonstrate that Peterson committed assault and battery on Officer Beale. Officer Beale further contends the District Court committed clear error by failing to analyze the clearly established law prong of qualified immunity. Lastly, Officer Beale contends that the District Court committed plain error by finding "the fact remains that the disputed claim that Officer Beale violated Peterson's constitutional right to be free of a warrantless search could be found to have lead [sic] to the death of Peterson and the resulting damages. Such disputes are in the exclusive province of the jury as factfinder and not appropriately resolved on summary judgment under the facts presented in this case."

## STATEMENT OF THE FACTS

On September 21, 2019, Megan Timmons ("Timmons") called 911 to report that Peterson took her belongings, money out of her bra, and kicked her out. [App. 296-297]. Prior to calling the police, Timmons threatened Peterson that she would call the police if he did not return her belongings, stating, "I know you're scared of

them, so you better not start with me. Give me back my stuff." Timmons called the police because she knew Peterson was not going to give her stuff back to her. She told the police what was going on and they agreed to send someone to help Timmons get her stuff. [App. 296-297]. Officer Beale responded to the call and upon arrival he encountered Timmons, and she relayed to him what had occurred. [App. 297]. Officer Beale and Timmons left the location where they had discussed the situation and walked towards the door of the apartment. [App. 47, ¶ 12 and 124-125, ¶ 12]. Prior to this day, Peterson forgot to give Timmons a key to the apartment and in order to gain entry she "drop-kicked the door," busting it and it was "pretty wobbly" and someone would be able to just push their way in. [App. 296]. Timmons "pressed it back on there" but it was "pretty wobbly" and someone would be able to just push their way in. [App. 296]. Timmons knocked on the door to Peterson's apartment, then Officer Beale knocked on the door and the door wobbled. [App. 299]. Officer Beale believed he had consent from Timmons to enter the apartment.[6]

---

[6] The District Court found that even if Timmons had the requisite authority to consent to Officer Beale's entrance into the apartment, she revoked that consent as evidence by her testimony "that she attempted to pull Officer Beale away from entering the home, indicating that she did not consent to his entry into the apartment. Thus, even if it was reasonable to believe Timmons (erroneously or correctly) was a cotenant with the capacity to give consent, the facts would lead to the conclusion that she did not give her acquiescence to Officer Beale's entry. Officer Beale does not challenge the District Court's findings on appeal. [App. 300-301].

Officer Beale asked Timmons if the door was open and she told him no, that it was just wobbly, and pushed in the door a little bit to show Officer Beale. Peterson then slammed the door shut. [App. 299]. Officer Beale claimed that Peterson slammed the door on his arm, thereby giving Officer Beale probable cause to arrest Peterson for assault and battery on an officer.[7] [App. 299]. Timmons attempted to go through the door, "***Peterson hit the door, the door hit Timmons and Timmons hit Officer Beale.*** Officer Beale was to the left of Timmons." [App. 299]. At this time, Officer Beale still had not entered the apartment, but used his foot to keep Peterson from locking the door as Officer Beale had made the decision to arrest Peterson for committing aggravated assault and battery on a police officer, which is a felony in the State of Oklahoma. [App. 47-48, ¶ 18 and App. 125, ¶ 18].

While Peterson and Officer Beale were on opposite sides of the door, Officer Beale tried to de-escalate the situation by explaining to Peterson that he was there in an attempt to help Timmons get her stuff so she could leave, and they could be done. [App. 48, ¶ 19 and 125, ¶ 19]. Peterson threatened Officer Beale by informing him that he would treat him like an intruder if he went into the apartment. [App. 298]. Officer Beale did not feel comfortable leaving Timmons at the apartment. He called for backup. [App. 298].

---

[7] The District Court found that a "significant, material factual dispute" regarding this fact precludes summary judgment on this claim, including the defense of qualified immunity." [App. 299-300].

Once the other officers arrived, Officer Beale tried to holster his weapon but ultimately placed it on a concrete pillar on the front porch. [App. 280]. A review of Officer Canada's body camera reveals that Officer Beale attempted to repeatedly force the door open, but it would close again. (Canada Video at 15:00:10). [App. 280]. Officer Beale and the other officers pushed their way through the apartment door. (Canada Video at 15:00:17). Once inside the apartment Peterson fought with the officers and was tasered multiple times, but he continued to fight. Peterson got ahold of the handle of Officer Meeks' gun and put his hands or fingers around the handle of it while it was in the holster, and he was trying to pull it out of the holster causing Officer Meeks to yell several times that Peterson was trying to get his gun. Officer Beale asked Officer Canada for the duty pistol on the floor. She handed him the weapon. Officer Beale then shot Peterson three times while Peterson continued to grapple with Officer Meeks. Peterson died from his wounds. [App. 281-284].

## SUMMARY OF THE ARGUMENTS

The District Court committed plain error as to the unlawful entry claim by its inconsistent findings of facts: (1) that a "significant, material factual dispute exists" as to whether Peterson "slammed Officer Beale's arm in the door" which would have given Officer Beale probable cause to arrest Peterson and (2) that "Peterson hit the door, the door hit Timmons and Timmons hit Officer Beale," which demonstrates that when Peterson slammed the door, he committed an assault and battery on

Timmons and Officer Beale giving Officer Beale probable cause to arrest him. When a district court's findings include contradictory facts in a case, leading to a situation where it finds a violation of a plaintiff's constitutional rights based on one interpretation of the facts, but not on another, this is internally inconsistent and contradicts the established legal principles and demonstrates a flawed application of the law to the case facts.

The District Court committed plain error when it failed to apply the law of *Kilgore v. Stroud,* 158 Fed.Appx. 944 (10th Cir. 2005) to its findings of fact that "Peterson hit the door, the door hit Timmons and Timmons hit Officer Beale," which would have provided probable cause to arrest Peterson, and thus his entry would have been lawful.[8] The District Court committed plain error in failing to conduct a proper qualified immunity analysis as to the Fourth Amendment unlawful entry claim. Instead, the District Court relied solely on the summary judgment standards of Rule 56 by finding that "a significant, material factual dispute precludes summary judgment on this claim." Although the District Court ended that sentence with the statement: "including the defense of qualified immunity" - nowhere in the Order did the District Court address the clearly established law prong of qualified immunity,

---

[8] Exigent circumstances are also required but based on the District Court's ruling, if Peterson committed assault and battery on Peterson, along with his threat to treat Officer Beale like an intruder, this would have provided the requisite exigent circumstances. [App. 288-289].

i.e. whether the law was clearly established to have put Officer Beale on notice that his entry into the apartment was unlawful.

Lastly, Officer Beale contends that the District Court committed plain error by finding "the fact remains that the disputed claim that Officer Beale violated Peterson's constitutional right to be free of a warrantless search could be found to have lead [sic] to the death of Peterson and the resulting damages. Such disputes are in the exclusive province of the jury as factfinder and not appropriately resolved on summary judgment under the facts presented in this case." Such findings contravene Tenth Circuit law as to whether it is a question only for the jury as to whether Officer Beale proximately caused the death of Peterson and the resulting damages therefrom.

## STANDARD OF REVIEW

The grant or denial of summary judgment is reviewed de novo, applying the same legal standard employed by the District Court pursuant to Rule 56 of the Federal Rules of Civil Procedure. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007). In doing so, a court's review of a summary judgment motion, the court draws "all justifiable inferences" and construes the record in the light most favorable to the party opposing the summary judgment. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 250 (1986). However, a plaintiff cannot be permitted to avoid summary judgment by attempting to create a factual dispute that is directly controverted by the record. *See Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007). Additionally, factual

disputes about immaterial matters will not preclude summary judgment. *Anderson*, 477 U.S. 242, 250 (1986). Specifically, at this stage, Plaintiff may not rely on mere allegations, but must have set forth, by affidavit or other evidence, specific facts in support of her. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Application of this standard to the case at hand reveals the District Court's Order denying summary judgment to Officer Beale with regard to the Estate's unlawful entry claim was improper and should be reversed.

Likewise, this Court reviews the denial of qualified immunity on summary judgment de novo. *Verdecia v. Adams*, 327 F.3d 1171, 1174 (10th Cir. 2003) (*quoting Baptiste v. J.C. Penney Co*., 147 F. 3d 1252, 1255 (10th Cir. 1998)); *Benefield v. McDowall*, 241 F.3d 1267, 1270 (10th Cir. 2001). Application of this standard to the case at hand reveals the District Court's Order denying summary judgment to Officer Beale with regard to the Appellees' unlawful entry claim was improper and should be reversed.

# ARGUMENT AND AUTHORITIES

## I. THE DISTRICT COURT COMMITTED CLEAR ERROR AS ITS FINDINGS OF FACTS ARE INTERNALLY INCONSISTENT AND AFFECT THE SUBSTANTIAL RIGHTS OF OFFICER BEALE.

The District Court committed clear error, thereby affecting Officer Beale's substantial rights, by its internally inconsistent findings of facts as to Officer Beale's probable cause to arrest Peterson. Although this Court will not set aside the District Court's findings of facts unless clearly erroneous, internally inconsistent findings constitution clear error. *John Allan Co. v. Craig Allan Co. L.L.C.,* 540 F.3d 1133, 1139-1140 (10th Cir. 2008); *See Mendiola v. United States,* 994 F.2d 409, 410 (7th Cir.1993)("Findings are clearly erroneous if the trial court's interpretation of the facts is implausible, illogical, internally inconsistent, or contradicted by documentary or other extrinsic evidence.").

In *Ute Indian Tribe of the Uintah and Ouray Reservation v. Lawrence,* the district court found that the record was inconclusive as to whether the tribe performed its obligation on or off the reservation, but then it also recognized that, "[b]ecause the Tribe is not a natural person," its conduct "must be interpreted through its ... ordinances, resolutions, and actions" and "the Tribe conducts its business from tribal headquarters." The Tenth Circuit in ruling that the district courts' findings of facts were internally inconsistent held that "absent any contrary evidence, we fail to see how the Tribe could have performed (or failed to perform)

its contractual duties from anywhere but the reservation." 22 F.4th 892, 902 (10th Cir. 2022); *see Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1184 (10th Cir. 2009)("[I]nternally inconsistent findings constitute clear error." *Quoting John Allan Co. v. Craig Allen Co.,* 540 F.3d 1133, 1139 (10th Cir. 2008)). Based on the *Ute* district court's internal inconsistencies, the Tenth Circuit remanded the case to the district court for further proceedings. *Id. citing Mor–Cor Packaging Prods., Inc. v. Innovative Packaging Corp.,* 328 F.3d 331, 336 (7th Cir.2003) (remanding on basis of internally inconsistent findings in the district court).

Here, likewise, the District Court's findings of facts are internally inconsistent and affect Officer Beale's substantial rights. The District Court found that "a significant, material factual dispute exists" as to Officer Beale's claim that he had probable cause to arrest Peterson when "Peterson slammed the door into Officer Beale's arm that was holding the door frame up." [App. 299-300 ]. The District Court supported its determination by its findings of facts that "Peterson then slammed the door shut. Timmons did not reference that Officer Beale's arm was caught in the door. Timmons also does not state that Beale was holding the door frame up at the time the door was slammed" and further that Timmons stated that "Officer Beale's arm did not get caught in the door when Peterson slammed it shut." [App. 299]. Based on these findings of facts the District Court denied Officer Beale summary

judgment finding that a jury could conclude that Peterson did not commit an assault and battery on Officer Beal.

However, the District Court also recognized facts that are internally inconsistent with the denial of summary judgment to Officer Beale regarding his lack of probable cause to arrest Peterson. The District Court found that Timmons "knocked on the door to Peterson's apartment, then Officer Beale knocked on the door. The door wobbled and Officer Beale asked Timmons if the door was open. She told him no, that it was just wobbly, and pushed in the door a little bit to show Officer Beale. Peterson then slammed the door shut" and "***that when she attempted to go through the door, Peterson hit the door, the door hit Timmons and Timmons hit Officer Beale. Officer Beale was to the left of Timmons***." (emphasis added). [App. 299]. These recognized facts demonstrate that Officer Beale had probable cause[9] to arrest Peterson thereby establishing that Officer Beale's entry into the apartment was lawful.[10] In the context of a qualified immunity defense on an unlawful arrest claim, the Court must ascertain whether the Defendant violated

---

[9] "Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused," *Ahlers v. Schebil,* 188 F.3d 365, 371 (6th Cir. 1999).

[10] Exigent circumstances would also be required and the District Court held in its Order that if Peterson did assault Officer Beale there would be exigent circumstances for him to enter the apartment lawfully to arrest Peterson in light of the fact that Peterson threatened to treat Officer Beale like an intruder if he came inside the apartment. [App. 298-299].

clearly established law "by asking whether there was 'arguable probable cause'" for the challenged conduct. *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012). "Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) (citing *Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007)). In other words, a defendant is entitled to qualified immunity if he "*could* have reasonably believed that probable cause existed in light of well-established law." *Felders ex rel. Smedley v. Malcolm*, 755 F.3d 870, 879 (10th Cir. 2014) (emphasis in original) (quotation omitted). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (quoting *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995)). Probable cause is not a high bar. *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018). Here, as argued, supra., the record clearly demonstrates that Officer Beale had arguable probable cause to arrest Peterson.

Therefore, the District Court's internally inconsistent findings of facts led to the District Court's incorrect application of the legal standard which led to a different outcome of this case thereby affecting Officer Beale's substantial rights. Officer

Beale requests this Court to find the District Court's inconsistencies to be significant and prejudicial constituting clear error and therefore he requests this Court overturn the District Court's decision entirely and issue a new ruling that based on the District Court's finding of fact that "Peterson hit the door, the door hit Timmons and Timmons hit Officer Beale" which gave Officer Beale probable cause to arrest Peterson.

## II. THE DISTRICT COURT COMMITTED PLAIN ERROR BY FAILING TO APPLY THE LAW OF *KILGORE V. STROUD* TO ITS FINDINGS OF FACT THAT PETERSON HIT THE DOOR, THE DOOR HIT TIMMONS AND TIMMONS HIT OFFICER BEALE, THEREBY MISAPPLYING ITS FINDINGS OF FACTS TO THE LAW.[11]

The District Court committed plain error by not determining that Peterson assaulted Officer Beale when he hit the door, the door hit Timmons and Timmons hit Peterson. By definition, Peterson's conduct was an assault and battery on Timmons and Officer Beale. The District Court found that Peterson knew Officer Beale and Timmons were at the threshold of his doorway, yet he deliberately slammed the door when Timmons tried to open it. [App. 298 and App. 5m ¶19 and 4, ¶19]. This was an assault on Timmons. Further, when Peterson's conduct caused

---

[11] Exigent circumstances are also required but based on the District Court's ruling, if Peterson committed assault and battery on Peterson, along with his threat to treat Officer Beale like an intruder, this would have provided the requisite exigent circumstances. [App. 288-289].

Timmons to hit Officer Beale, this constituted an assault and battery on Officer Beale through transferred intent. [12]

Although Officer Beale limited his argument in his briefing to the fact that he had probable cause to arrest Peterson based on Peterson slamming his arm in the door, as Officer Beale believed this was his most persuasive argument.

Officer Beale seeks plain error review from this Court for the unintentional forfeiture of this argument from his briefing. *McKissick v. Yuen,* 618 F.3d 1177 (10th Cir. 2010) *citing United States v. Cruz–Rodriguez,* 570 F.3d 1179, 1183–84 (10th Cir.2009). Officer Beale asks this Court to accept his argument on appeal, as the finding of fact by the District Court give forth to such argument and result in the requisite probable cause for Officer Peterson to enter the apartment lawfully to arrest Peterson. *Hill v. Kemp,* 478 F.3d 1236, 1250–51 (10th Cir.2007); *Headrick v.*

---

[12] *See Jones v. State,* 508 P.2d 280 (Okla. Crim. App. 1973)(defendant shot his gun in the direction of campers in order to arrest them but hit the third parties' camper and this constituted transferred intent on the third parties). Here, Peterson slammed the door to keep Timmons from entering the apartment – this act caused the door to hit Officer Beale and therefore he was assaulted through transferred intent.

*Rockwell Int'l Corp.,* 24 F.3d 1272, 1277-78 (10th Cir. 1994)(appellants argument must be referenced by the record or waived).

Further, despite Officer Beale's lack of argument in his briefing, this Court's holding in *Kilgore v. Stroud,* makes it clear that Officer Beale had probable cause to arrest Peterson not only based on Officer Beale's version of the facts, but also based on the District Court's finding of facts. This Court held in *Kilgore* that:

> To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.

158 Fed.Appx. 944, 952 (10th Cir. 2005) *citing Maryland v. Pringle,* 540 U.S. 366, 371, 124 S.Ct. 795 (2003) (internal quotation marks omitted). Further, the Supreme Court stated in *Pringle* that "[t]he probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Id.* Therefore, despite the District Court finding a material factual dispute existed as to Officer Beale's version of events that provided him the requisite authority to arrest Peterson, based on the District Court's finding of fact that Peterson hit the door, the door hit Timmons and Timmons hit Officer Beale, Officer Peterson had probable cause to arrest Peterson. A reasonable officer could conclude that there was probable cause to believe that Peterson had committed any of the offenses previously mentioned. *Kilgore* at 952.

Additionally, Officer Beale's argument on appeal that Peterson assaulted and battered him does not conflict with the record evidence, although the exact reasoning for the assault and battery is what is distinguished, given the District Court's findings of facts, there can be no other result that Peterson committed the crime of assault and battery giving Officer Beale probable cause to arrest him. Therefore, Officer Beale seeks review by this Court to accept this argument on appeal.

## III. THE DISTRICT COURT COMMITTED CLEAR ERROR BY FAILING TO ANALYZE THE CLEARLY ESTABLISHED LAW PRONG OF QUALIFIED IMMUNITY.

When a defendant has asserted qualified immunity as a defense in a motion for summary judgment, only where a district court determines that based on the undisputed material facts, there was no violation of the plaintiff's constitutional rights, is the district court allowed to forego a qualified immunity analysis. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151 (2001). However, where genuine disputes of material fact exist as to whether defendants' violated a plaintiff's constitutional rights, and if plaintiff's version of the facts are presumed true, this would establish that defendants violated plaintiff's constitutional rights,[13] then "the next ... step is to ask whether the right was clearly established." *Id.* Here, the District Court found there was a "significant, material factual dispute that exists" and therefore denied

_____

[13] *Jeffers v. Gomez*, 267 F.3d 895, 907 (9th Cir. 2005) (citing *Crawford-El v. Britton,* 523 U.S. 574, 598, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998)

Officer Beale's summary judgment motion as to Plaintiff's unlawful arrest claim without analyzing the clearly established prong of qualified immunity. In fact, the District Court merely denied summary judgment, "***including the defense of qualified immunity.***" [App. 300] (emphasis added). This Court held in *Cox v. Glanz* that:

> The objective is *not* to determine whether a plaintiff survives summary judgment because plaintiff's evidence raises material issues that warrant resolution by a jury. Instead, the principal purpose is to determine whether plaintiff's factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the *legal* question before the court."

800 F.3d 1231, 1243 (10th Cir. 2015) (emphasis added) *quoting Thomson v. Salt Lake Cnty.,* 584 F.3d 1304, 1326 (10th Cir. 2009). (Holmes, J., concurring).

By failing to analyze the clearly established law prong of qualified immunity, the District Court committed clear error by contravening well-established law. In other words, the district court's opinion addressed only the *first* part of the *two*-part test for qualified immunity. This approach was taken by a New Mexico District Court and on appeal this Court held that:

> If it were clear that no constitutional violation took place, as the defendants urge, we might simply reverse the district court and grant qualified immunity. But the answer to that question isn't so clear in this case. Faced with *that* problem we usually do well—as *Pearson* and *Camreta* remind us— to proceed directly to the clearly established law question when we're sure it yields immunity anyway. But there again the answer isn't so obvious in this case. So it is that we are left in a situation without obvious answers to either qualified immunity question and risk confronting difficult constitutional questions without the benefit of a full analysis from the district court. In these

circumstances, there remains, however, another course available to us—remanding the matter back to the district court to finish the work of answering the second qualified immunity question. *See Distiso v. Town of Wolcott,* 352 Fed.Appx. 478, 482 (2d Cir.2009) (unpublished)("When a district court gives only cursory treatment to the immunity defense, [we] will remand to the district court with instructions to give further consideration to the matter.") (internal quotation omitted). That course bears the advantage of allowing the adversarial process to work through the problem and culminate in a considered district court decision, a decision that will minimize the risk of an improvident governing appellate decision from this court. And that course is especially prudent where, as here, the issue is close and the briefing on appeal less than entirely satisfactory. Indeed, many of the same considerations that *Pearson* and *Camreta* identify as counseling in favor of proceeding directly to the second qualified immunity element—the possibility of avoiding a needless constitutional question, the quality of briefing, and the desire to avoid the risk of a poor decision—also counsel in favor of remanding to ensure the district court addresses the second element before we begin to tangle with a case on appeal. And it is for these very reasons that we reserve decision on both aspects of the qualified immunity question in this case until after the district court, on remand, has finished its work on the clearly established law prong.

*Kerns v. Bader,* 663 F.3d 117, 1181-82 (10th Cir. 2011).

The District Court's failure might have been the result of Plaintiff's feeble attempt to argue this prong of qualified immunity by citing only to *U.S. v. Belisle*, 164 Fed.Appx. 657, 660 (10th Cir. 2005). This case is an unpublished decision and is insufficient to have provided notice to Officer Beale that his conduct was unconstitutional. This Court *Mecham v. Frazier,* 500 F.3d 1200, 1206 (10th Cir. 2007), held that an unpublished opinion "provides little support for the notion that the law is clearly established" on a given point. Further and importantly, The Estate failed to articulate how the facts of *U.S. v. Belisle* applied to the facts of the instant

case which would have been sufficient to give notice to Officer Beale that his

conduct was unconstitutional. The Supreme Court held in *City of Tahlequah v. Bond:*

> We have repeatedly told courts not to define clearly established law at too
> high a level of generality. *See, e.g., Ashcroft v. al-Kidd*, 563 U.S. 731, 742,
> 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). It is not enough that a rule be
> suggested by then-existing precedent; the "rule's contours must be so well
> defined that it is 'clear to a reasonable officer that his conduct was unlawful
> in the situation he confronted.'" *Wesby*, 583 U. S., at ——, 138 S.Ct., at
> 590 (*quoting Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d
> 272 (2001)). Such specificity is "especially important in the Fourth
> Amendment context," where it is "sometimes difficult for an officer to
> determine how the relevant legal doctrine, here excessive force, will apply to
> the factual situation the officer confronts." *Mullenix v. Luna*, 577 U.S. 7, 12,
> 136 S.Ct. 305, 193 L.Ed.2d 255 (2015) (per curiam) (internal quotation marks
> omitted).

595 U.S. 9, 12 (2021). Not only did The Estate not carry its burden to demonstrate

that the law was clearly established, but the District Court completely failed to

address the clearly established prong of qualified immunity. [App. 277-310].

Failure to address the second prong of qualified immunity analysis here

constitutes clear error by the District Court. The law is well established that:

> When a defendant asserts a qualified immunity defense, the burden shifts to
> the plaintiff to satisfy a strict two-part test: first, the plaintiff must show "that
> the defendant's actions violated a constitutional or statutory right"; second, the
> plaintiff must show that this right was "clearly established at the time of the
> conduct at issue." "If, and only if, the plaintiff meets this two-part test does a
> defendant then bear the traditional burden of the movant for summary
> judgment-showing that there are no genuine issues of material fact and that he
> or she is entitled to judgment as a matter of law."

*Clark v. Edmunds,* 513 F.3d 1219 (10th Cir. 2008), *citing Nelson v. McMullen,* 207

F.3d 1202, 1205 (10th Cir.2000). Plaintiff did not carry its burden as to the second

prong of qualified immunity and the District Court erred by failing to even consider this prong of qualified immunity therefore, Officer Beale requests this Court to reverse the District Court's Order considering the Plaintiff failed to carry its burden to demonstrate that Officer Beale was on notice that his entry into the apartment was in violation of Peterson's constitutional rights.

This Court has discretion to review this legal challenge to the District Court's denial of qualified immunity even where District Court "failed to address an issue, we can still reverse on that ground if the issue was preserved and is meritorious." *Attocknie citing Sac & Fox Nation v. Norton,* 240 F.3d 1250, 1264–67 (10th Cir.2001) (appellate court reverses on a question of law not reached by the district court); *Lowe v. Town of Fairland,* 143 F.3d 1378, 1380 (10th Cir.1998) (reviewing appeal from denial of motion for qualified immunity despite district court's failure to address the issue). Given the plain error by the District Court regarding the internal inconsistent findings of facts, it is evident that Peterson committed the crime of assault and battery on Timmons as well as on Officer Beale through transferred intent and therefore the law was clearly established that a police officer may arrest someone without a warrant if the person commits a misdemeanor in the officer's presence. *Carroll v. U.S.*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790 (1925), *citing Kurtz v. Moffitt*, 115 U. S. 487, 6 S. Ct. 148 (1885); *John Bad Elk v. United States*, 177 U. S. 529, 20 S. Ct. 729, 44 L. Ed. 874 (1900). And further, a

warrantless entry into a home may be justified, however, in certain exceptional circumstances. "It is accepted, at least as a matter of principle, that a search or seizure carried out on a suspect's premises without a warrant is per se unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances.'" *Coolidge v. New Hampshire*, 403 U.S. 443, 474–75 (1971). The District Court found that where it is believed that Peterson assaulted Officer Beale, then fled into his apartment, that would be sufficient evidence giving rise to exigent circumstances. [App. 288-289]. Therefore, based on these findings of facts as applied to clearly established law, Officer Beale's entry into the apartment to arrest Peterson was lawful and therefore Officer Beale should be afforded qualified immunity.

IV. **THE DISTRICT COURT COMMITTED CLEAR ERROR BY FINDING "THE DISPUTED CLAIM THAT OFFICER BEALE VIOLATED PETERSON'S CONSTITUTIONAL RIGHTS TO BE FREE OF A WARRANTLESS SEARCH COULD BE FOUND TO HAVE LED TO THE DEATH OF PETERSON AND THE RESULTING DAMAGES."**

The District Court committed clear error by finding that it should be left to the jury to decide whether "the disputed claim that Officer Beale violated Peterson's constitutional right to be free of a warrantless search could be found to have lead [sic] to the death of Peterson and the resulting damages. [App. 301]. The District Court erred by holding that "[s]uch disputes are in the exclusive province of the jury as factfinder and not appropriately resolved on summary judgment under the facts

presented in this case." [App. 301]. The District Court should handle these questions of proximate cause if the facts are not in dispute and "reasonable persons could not differ about the application to those facts of . . . 'proximate cause.' *Trask v. Franco,* 446 F.3d 1036, 1047 (10th Cir. 2006) *citing* Keeton et al., *supra,* § 45, at 321. If reasonable persons could differ, a factfinder should determine the issues of proximate cause." *Id.* Further, "Causation is generally a jury question." *McBeth v. Himes,* 598 F.3d 708, 717 (10th Cir. 2010) *citing Stevens v. Barnard,* 512 F.2d 876, 879 (10th Cir.1975). However, "whether a plaintiff sufficiently alleges causation is a legal question." *Id. citing United States ex rel. Ramseyer v. Century Healthcare Corp.,* 90 F.3d 1514, 1517 n. 1 (10th Cir.1996) (noting that 'the sufficiency of the allegations underlying [a] claim is a legal question').

For purposes of this portion of the appeal, even accepting the claim that Officer Beale's entry was unlawful, The Estate's allegations do not establish that Officer Beale's entry caused Peterson's death. *See Cameron v. City of Pontiac, Mich.*, 813 F.2d 782, 786 (6th Cir. 1987)("[e]ven if Cameron had been seized by unreasonable means, his estate could not recover unless the constitutional violation was a proximate cause of his death"). Therefore, this Court has discretion to review whether Officer Beale is entitled to qualified immunity on the basis of a lack of causation between Officer Beales' conduct and Peterson's death, based on the version of facts most favorable to The Estate. *Gross v. Pirtle,* 245 F.3d 1151, 1156–

57 (10th Cir.2001). The law is clear that even where an entry is unlawful and it leads to the death of the suspect, a superseding cause can prohibit the defendant from being liable for the resulting death of the suspect. *Attocknie v. Smith,* 798 F.3d 1252 (10th Cir. 2015).

It is well-settled that the ordinary rules of tort causation apply to constitutional tort suits. While general tort liability makes a man responsible for the natural consequences of his actions, another basic principle of causation in tort law is that intervening events – also called superseding causes – can break the chain of causation and cut off liability: As part of the proximate cause analysis, a defendant is not liable for harm produced by a "superseding cause." . . . A superseding cause is one that is "not within the scope of the risk created by the actor's conduct." *James v. Chavez*, 511 F. App'x 742, 747 (10th Cir. 2013) *citing* RESTATEMENT (SECOND) OF TORTS § 442B (1965). The proximate cause analysis applies to constitutional torts, as well. In civil rights cases, "a superseding cause, as we traditionally understand it in tort law, relieves a defendant of liability." *Id.; c.f. Trask v. Franco,* 446 F.3d 1036, 1046 (10th Cir. 2006).

In *James v. Chavez*, suit was brought against an officer who fired a shot at a suspect during a standoff between the suspect and the police department. 511 Fed.Appx. 742 (10th Cir. 2013) (unpublished). After the officer's shot missed the suspect, the officer ordered the SWAT team to enter the suspect's house. The suspect

was subsequently shot and killed by a member of the SWAT team after he tried to stab the SWAT officer with a knife. The plaintiff claimed that the officer's errant shot and his subsequent order for the SWAT team to enter the suspect's house set in motion a chain of events that foreseeably resulted in the SWAT team killing the suspect, thus making the officer liable. The Tenth Circuit affirmed the dismissal of the officer and found that plaintiff's claim was barred by the lack of proximate causation by holding that the officer's actions did not proximately cause the suspect's death as the suspect's death was caused by his own acts, not those of the officer. Further, this Court affirmed the district court's dismissal of the claim for excessive force in finding that the officer was not the proximate cause of the suspect's death. *Id.*

In *James v. Chavez,* this Court cited *Bodine v.Warwick,* to compare the suspect's actions in both cases – in *Bodine* the suspect was injured as a direct result of trying to shoot a police officer and in *James v. Chavez,* the suspect was shot and killed as a direct result of trying to stab a police officer. *Bodine v. Warwick,* 72 F.3d 393, 400 (3rd Cir. 1995)(noting that if a suspect were to shoot at persons known to be officers, the suspect's act would be a superseding cause absolving the officers of liability for harm caused as a result of an unlawful entry). This Court held that "even if the actions of Officer Carter (officer) violated Mr. Murphy's (suspect) constitutional rights, Mr. Murphy's (suspect) unlawful and deliberate attack on the

SWAT team constitutes a superseding cause of his death that defeats liability for the officer. *Id.* See *Brower v. Cnty. of Inyo*, 489 U.S. 593, 599, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989).

Here, applying the law, it is clear that Peterson's conduct resulted in Officer Beale shooting and killing him as the District Court found:

> [O]nce Peterson was aware the entrants to his apartment were police officers, he could have ended the violent physical altercation, and he certainly could have ended his attempts to unholster Officer Meeks' weapon. These actions went beyond mere efforts to defend himself and established him as the aggressor once the officers entered the apartment.

[App. 294]. Further, the District Court granted Officer Beale and the other officers qualified immunity as to Plaintiff's alleged excessive force claim. Therefore, the District Court erred by finding that whether ". . . the disputed claim that Officer Beale violated Peterson's constitutional right to be free of a warrantless search could be found to have lead [sic] to the death of Peterson and the resulting damages." [App. 301-302]. Officer Beale asks this Court to find that Officer Beale's conduct did not proximately cause the death of Peterson and therefore he should not be liable for same.

## CONCLUSION

The District Court committed reversible error as follows: (1) in its internally inconsistent findings of facts, (2) failure to determine that Officer Beale had probable cause to arrest Peterson based on *Kilgore v. Stroud,* (3) its failure to analzye

the clearly established prong of qualified immunity; and (4) by finding that it was a question for the jury to determine if Officer Beale was the proximate cause of Peterson's death.

## **STATEMENT OF COUNSEL AS TO ORAL ARGUMENT**

Oral argument is requested as this case involves abstract issues of law that require argument by counsel.

Respectfully submitted,

By: SCOTT B. WOOD
Attorney for Appellees


/S/ Scott B. Wood
Wood, Puhl & Wood, P.L.L.C
4037 East 49th St.
Tulsa, Oklahoma 74135
(918) 742-0808/ (918) 607-5946
Email Address: **okcoplaw@aol.com**

## CERTIFICATE OF COMPLIANCE

Section 1. Word count

As required by Fed.R.App.P. 32 (a)(7)(c), I certify that this brief is proportionally spaced and contains 7,986 words.

Complete one of the following:

X    I relied on my word processor to obtain the count and its Microsoft Word program.

I counted five characters per word, counting all characters including citations and numerals.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

By:      /S/ Scott B. Wood
         Scott B. Wood
         *Attorney for Appellant*

## CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS

I hereby certify that a copy of foregoing APPELLANT'S OPENING BRIEF, as submitted in Digital Form via the court's ECF system, is an exact copy of the written document filed with the Clerk and has been scanned for viruses with AVG anti-virus, and according to this program is free of viruses. In addition, I certify all required privacy redactions have been made.

                 S/ Scott B. Wood
By:              Scott B. Wood
                 *Attorney for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **APPELLANT'S OPENING BRIEF** was furnished through (ECF) electric service to the following on this 20th  day of November 2024:

Jack Mattingly, Jr.
Sean McKelvey

                      By: Scott B. Wood
                      /S/ Scott B. Wood
                      (Digital)

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

CHRISTY BAILEY, as Personal          )
Representative of the Estate         )
of Jeffrey Peterson, deceased,       )
                                     )
            Plaintiff,               )
                                     )
v.                                   )        Case No. CIV-20-327-JAR
                                     )
CITY OF ADA;                         )
OFFICER MARCUS BEALE;                )
OFFICER JUSSELY CANADA;              )
OFFICER MICHAEL MEEKS; and           )
OFFICER PHILLIP VOGT.                )
                                     )
            Defendants.              )

## OPINION AND ORDER

This matter comes before the Court on the following motions: (1) Motion for Summary Judgment filed by Defendants Officer Jussely Canada, Officer Michael Meeks, and Officer Phillip Vogt (Docket Entry #93); (2) Motion for Summary Judgment filed by Defendant City of Ada (Docket Entry #94); and (3) Motion for Summary Judgment filed by Defendant Officer Marcus Beale (Docket Entry #95).

### Facts Relevant to All Claims

Officers Canada, Meeks, and Vogt are all CLEET certified officers with the City of Ada, Oklahoma Police Department. On September 21, 2019, these Officers received a call for assistance from Officer Marcus Beale, also a CLEET certified officer with the City of Ada, who was at the scene of an apartment rented by Jeffrey Peterson ("Peterson"). Officer Canada was the first of the backup

officers to arrive.   She observed Officer Beale up against the closed door of Peterson's apartment and a female, identified as Megan Timmons ("Timmons") was standing over to the side at the apartment.  (Canada Depo., p. 29, ll. 1-13).  Officer Canada never attempted to make contact with Timmons prior to entering Peterson's apartment.  She was asked for assistance by Officer Beale which she deemed more important at the time.  (Canada Depo., p. 39, ll. 8-14).

Officer Canada went to Officer Beale, who had his duty weapon drawn.  (Canada Depo., p. 29, ll. 14-19).  Seeing Officer Beale's weapon, Officer Canada also drew her weapon.  (Canada Depo., p. 30, ll. 4-6).  Officer Beale told Officer Canada that Peterson had slammed the apartment door on Officer Beale's arm as he tried to enter the apartment.  (Canada Depo., p. 38, ll. 5-7).  She also stated that Peterson "told officers that he was going to treat us as intruders if we went into the residence" although she did not attribute this statement to Officer Beale.  (Canada Depo., p. 33, ll. 23-25, p. 34, ll. 1-2).  Officer Canada did not know what happened before she arrived, only what she was told by Officer Beale.  (Canada Depo., p. 38, ll. 1-4).  She only knew that Officer Beale had told her that Peterson had committed assault and battery on a police officer when the door was allegedly slammed upon Officer Beale's arm.  (Canada Depo., p. 34, ll. 17-24).

Officer Canada did not know if Officer Beale had any injuries resulting from the slamming of the door on his arm. (Canada Depo. p. 38, ll. 5-16). She did not hear him complain of any pain or soreness in his arm. (Canada Depo. p. 38, ll. 21-25).

Officer Canada testified that the other officers arrived on the scene in "[a] matter of moments." (Canada Depo. p. 39, ll. 1-7). Officer Meeks arrived with Officer Vogt, who was in training with Officer Meeks. (Meeks Depo., p. 26, ll. 14-24). Officer Meeks and Officer Vogt arrived at the Peterson apartment and observed Officer Beale and Officer Canada on the front porch. They also approached the front porch where Officer Canada briefed Officer Meeks. (Meeks Depo., p. 30, ll. 1-9). Officer Meeks understood that "there was some sort of threats that had been made." (Meeks Depo., p. 30, ll. 10-13). Officer Meeks did not recall speaking with Officer Beale before the apartment door was breached. (Meeks Depo. p. 31, ll. 1-3).

Officer Meeks stated that he believed Officer Beale was trying to gain access into Peterson's apartment, stating "from what Officer Canada said and Officer Beale's actions, I proceeded (sic) that some sort of maybe threats or maybe some sort of assault that had occurred." (Meeks Depo., p. 31, ll. 9-12). He believed that there was a "serious threat", "[t]aking the totality of what I was told and what I saw. . . ." (Meeks Depo., p. 32, ll. 6-9).

Officer Meeks observed Officer Beale trying to gain access through the apartment door several times. Officer Beale tried to holster his weapon but ultimately placed it on a concrete pillar on the front porch. Officer Meeks grabbed the gun, deciding that the porch was "probably not the best place for it" and gave it to Officer Vogt. (Meeks Depo., p. 32, ll. 11-18). Meeks holstered his weapon so that he could use both hands to arrest or detain Peterson. (Meeks Depo., p. 32, ll. 19-25, p. 33, ll. 1-2). He did not know if Peterson was armed. (Meeks Depo., p. 34, ll. 14-16). Officer Meeks believed that entry to the house had to be made because "something had happened prior to [his] arrival with Officer Beale and that he was in hot pursuit of a suspect." (Meeks Depo., p. 34, ll. 13-20).

A review of Officer Canada's body camera reveals that Officer Beale attempted to repeatedly force the door open but it would close again. (Canada Video at 15:00:10). Officer Meeks then gets behind Officer Beale to jointly push their way through the apartment door. (Canada Video at 15:00:17). Officer Beale stated, "You done f***** up, man." (Canada Video at 15:00:21). Officer Canada can then be seen placing her hand on Officer Meeks' back to assist in pushing through the door. (Canada Video at 15:00:22). Officer Vogt cannot be seen pushing through the door but Officer Meeks testified that he came behind Officer Canada.

4

(Meeks Depo., p. 33, ll. 25, p. 34, ll. 1-2).   The Officers then gain access to the apartment by forcing their way through the door. (Canada Video at 15:00:25).   Officer Beale and Officer Meeks physically struggle with Peterson who resists their attempts to restrain him.   (Canada Video at 15:00:28).   Officer Canada then deploys a taser on Peterson multiple times.   (Canada Video at 15:00:31, 15:00:36).   Officer Meeks begins yelling "Cuff him, cuff him, cuff him".   (Canada Video at 15:00:41).   Officers Beale, Meeks, and Vogt become visible on the video, struggling to restrain Peterson while Officer Canada continues to deploy her taser. (Canada Video at 15:00:41).   Officer Vogt attempts to place handcuffs on Peterson while Officers Beale and Meeks continue their physical struggle with Peterson.   (Canada Video at 15:00:48). Officer Vogt's efforts are unsuccessful.   (Canada Video at 15:00:52).   Officer Meeks begins screaming.   (Canada Video at 15:00:57).   Officer Beale disengages from his struggle with Peterson and becomes "wrapped up" in the lead lines from Officer Canada's taser.   (Canada Video at 15:01:14).   Officer Meeks continued to struggle with Peterson in the corner of the apartment. (Canada Video at 15:01:17).   Officer Meeks then begins screaming "going for my gun."   (Canada Video at 15:01:25).   A taser continues to be audibly deployed.   (Canada Video at 15:01:26). Officer Canada then calls dispatch for "more units."   (Canada

Video at 15:01:29). Officer Meeks again yells "going for my gun." (Canada Video at 15:01:33). Officer Beale can be seen pointing a weapon in the direction of Officer Meeks and Peterson, yelling "watch out, watch out." (Canada Video at 15:01:39). Officer Meeks again yells "going for my gun." (Canada Video at 15:01:43). Gun shots are heard in the video from Officer Beale's weapon. (Canada Video at 15:01:46). Officer Canada advises dispatch "shots fired, shots fired." (Canada Video at 15:01:47). Officer Canada then tells dispatch "roll EMS." (Canada Video at 15:01:52).

Officer Meeks testified that when he entered the apartment behind Officer Beale, Peterson was "making contact" with Officer Beale "in the face area" while Officer Beale was trying to grab Peterson's hands. (Meeks Depo., p. 42, ll. 10-22). Peterson and Officer Beale then traded punches when they ended up on the couch with Peterson on top of Officer Meeks and both of them continuing to throw punches. (Meeks Depo., p. 42, ll. 24-25; p. 43, ll. 1-3). He testified that Peterson then tried to grab Officer Beale's gun but it was not in the holster. (Meeks Depo., p. 43, ll. 5-7). Officer Meeks also tried to grab Peterson's arms and body. (Meeks Depo., p. 43, ll. 24-25).

Officer Meeks also believed Officer Beale told Officer Canada to tase Peterson, which she attempted with little effect. (Meeks

Depo., p. 45, ll. 6-9).  Officer Meeks stated when he tried to handcuff Peterson but Peterson grabbed for his gun.  (Meeks Depo., p. 45, ll. 9-13).  Officer Meeks stated that he screamed in order to direct Peterson's attention so he turned toward the Officer.  (Meeks Depo., p. 45, ll. 24-25; p. 46, l. 1).  Peterson got off Officer Beale and continued struggling with Officer Meeks, trying to strike Officer Meeks numerous times throughout the incident.  (Meeks Depo., p. 46, ll. 4-10).  Officer Meeks did not see Peterson try to strike either Officer Canada or Officer Vogt.  (Meeks Depo., p. 46, ll. 11-15).

Officer Meeks could "feel [Peterson] trying to reach for my gun."  (Meeks Depo. p. 46, ll. 23-24).  He could feel Peterson's hand on his holster and the handle of the gun.  (Meeks Depo., p. 47, ll. 1-2).  Officer Meeks stated Peterson "actually got ahold of the handle and put his hands or fingers around the handle of my – my gun that was still in my holster and was trying to lift up, pull it out of the holster.  And during those times I actually said or screamed, he's going for my gun, he's trying to get my gun."  (Meeks Depo., p. 47, ll. 18-24).  Officer Vogt testified that when Officer Meeks screamed, he looked over Peterson's shoulder and could "see that his left arm is on Officer Meeks' firearm with the retention broken, and I see the firearm's being pulled out as Officer Meeks is using both of his arms to attempt

to push it back into the holster." (Vogt Depo., p. 36, ll. 3-9).

Officer Canada stated that she observed Peterson trying to get Officer Meeks' duty weapon out of his holster. (Canada Depo. p. 53, ll. 23-24). She testified that she saw Peterson "grabbing ahold of Officer Meeks' pistol and trying to grab it out of the holster" with his left hand. (Canada Depo. p. 54, ll. 4-7). Officer Canada saw Officer Beale use his taser on Peterson. (Canada Depo., p. 54, ll. 11-15). She looked down and saw one of the Officer's duty pistols on the ground. (Canada Depo., p. 54, ll. 19-20). Officer Beale asked Officer Canada for the duty pistol on the floor. She handed him the weapon. Officer Beale then shot Peterson three times while Peterson continued to grapple with Officer Meeks. Peterson died from his wounds.

Plaintiff brought this action on September 21, 2020, alleging (1) a violation by all Defendants of Peterson's First, Fourth, and Fourteenth Amendment constitutional rights as enforced through 42 U.S.C. § 1983 by "illegally seizing Plaintiff, illegally entering Plaintiff's home, using excessive force, failing to intervene to prevent the deprivation of [Peterson's] rights, retaliating against [Peterson] for the exercise of his rights, and acting in concert to commit these constitutional violations, Defendants exhibited an unreasonable and deliberate indifference to [Peterson's] rights."; (2) wrongful death against all Defendants;

(3) intentional infliction of emotional distress against the
Defendant Officers; (4) negligent hiring, training, and retention
against Defendant City of Ada ("City"); (5) assault and battery
against all Defendants; and (6) an Open Records Act violation
against Defendant City.

### General Law Governing Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure,
summary judgment is appropriate "if the pleadings, depositions,
answers to interrogatories, and admissions on file, together with
the affidavits, if any, show that there is no genuine issue as to
any material fact and that the moving party is entitled to judgment
as a matter of law." Universal Money Centers v. A.T. & T., 22
F.3d 1527, 1529 (10th Cir.), *cert. denied*, 513 U.S. 1052, 115 S.Ct.
655, 130 L.Ed.2d 558 (1994). The moving party bears the initial
burden of showing that there is an absence of any issues of
material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106
S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). A genuine issue of
material fact exists when "there is sufficient evidence favoring
the nonmoving party for a jury to return a verdict for that party."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505,
2510-11, 91 L.Ed 2d 202 (1986). In determining whether a genuine
issue of a material fact exists, the evidence is to be taken in
the light most favorable to the nonmoving party. Adickes v. S.H.

Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. Applied Genetics v. Fist Affiliated Securities, 912 F.2d 1238, 1241 (10th Cir. 1990); Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

**Summary Judgment Request of Officers Canada, Meeks, and Vogt**

Officers Canada, Meeks, and Vogt first assert they are entitled to qualified immunity and, in doing so, first asserts that no violation of the Fourth Amendment occurred. "Individual defendants named in a § 1983 action may raise a defense of qualified immunity," Cillo v. City of Greenwood Village, 739 F.3d 451, 459 (10th Cir. 2013), which "shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law," Gann v. Cline, 519 F.3d 1090, 1092 (10th Cir. 2008)(quotations omitted). Generally, "when a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's

10

unlawful conduct." <u>Cillo</u>, 739 F.3d at 460.

While Plaintiff identifies a litany of alleged constitutional violations in the Complaint, she limits her discussion within the response to the summary judgment motion to the warrantless entry into Peterson's apartment and excessive force.  This Court will, therefore, consider any other alleged violation as abandoned.  The remaining two bases for an alleged constitutional violation will be addressed in turn.

The Fourth Amendment imposes strict limits on when law-enforcement officers may enter a home without a warrant. *See* <u>United States v. McCullough</u>*,* 457 F.3d 1150, 1163 (10th Cir. 2006) ("'It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'") (quoting <u>Payton v. New York</u>*,* 445 U.S. 573, 586, (1980)).

A warrantless entry into a home may be justified, however, in certain exceptional circumstances. *See* <u>Coolidge v. New Hampshire</u>*,* 403 U.S. 443, 474–75 (1971) ("It is accepted, at least as a matter of principle, that a search or seizure carried out on a suspect's premises without a warrant is per se unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances.'

"); *see also* <u>Brigham City v. Stuart</u>*,* 547 U.S. 398, 403 (2006) ("We have held, for example, that law enforcement officers may make a warrantless entry onto private property to fight a fire and investigate its cause, to prevent the imminent destruction of evidence, or to engage in 'hot pursuit' of a fleeing suspect." (internal citations omitted)); <u>Georgia v. Randolph</u>*,* 547 U.S. 103, 116 n. 6 (2006) (listing "hot pursuit," "protecting the safety of ... police officers," "imminent destruction [of a] building," "likelihood that [a] suspect will imminently flee," and "a fairly perceived need to act on the spot to preserve evidence" as exigent circumstances that might justify a warrantless search of a residence).

In this case, Officers Canada, Meeks, and Vogt consistently stated that they relied upon what they were told by Officer Beale as to the justifying circumstances for a warrantless entry of Peterson's apartment.  The bases provided by Officer Beale were (1) he had been assaulted by Peterson; (2) Peterson threatened further violence against Officer Beale by stating he would be "treated like an intruder"; and (2) after assaulting Officer Beale, Peterson fled into his apartment.  Officer Beale's representations were all that Officers Canada, Meeks, and Vogt knew and relied upon in their subsequent actions of following Officer Beale into

Peterson's apartment.  The foundation for their continued actions in this encounter would have represented exigent circumstances justifying a warrantless entry into the apartment under the clearly established law existing at the time, so long as (1) they were entitled to rely upon Officer Beale's representations; and (2) it was objectively reasonable to do so.

This is not a novel concept in the Tenth Circuit case authority.  In Stearns v. Clarkson, the Tenth Circuit stated

> When one officer requests that another officer assist in executing an arrest, the assisting officer is not required to second-guess the requesting officer's probable cause determination, nor is he required to independently determine that probable cause exists. *See* Baptiste v. J.C. Penney Co., 147 F.3d 1252, 1260 (10th Cir. 1998) ("An officer who is called to the scene to conduct a search incident to arrest is not required to reevaluate the arresting officer's probable cause determination in order to protect herself from personal liability.").  Rather, "a police officer who acts in reliance on what proves to be the flawed conclusions of a fellow police officer may nonetheless be entitled to qualified immunity as long as the officer's reliance was objectively reasonable." Id. (quotations omitted).
>
> Stearns, 615 F.3d 1278, 1286 (10th Cir. 2010).

Officers Canada, Meeks, and Vogt, faced with a emergent situation, were reasonable in their reliance upon Officer Beale's

representations of the circumstances presented. Plaintiff is critical of several of these Officers' actions. She contends that Officer Beale never relayed his assault over the radio or deemed the situation an emergency. This does not diminish the increased level of threat communicated by Officer Beale to the assisting Officers when these Officers arrived and their reliance upon those representations. Similarly, Officer Beale told the assisting Officers that his arm was slammed in the door but Plaintiff contends they did not observe any injury. The Officers were not required to investigate the level of injury sustained by Officer Beale before acting in concert with him to enter the apartment.

Plaintiff also states that Timmons does not support Officer Beale's version of the facts. This may have an effect upon Officer Beale's status in this action but it does not affect the reasonableness of the reliance of Officers Canada, Meeks, and Vogt upon Officer Beale's representations.

Considering what these Officers knew and when they knew it based entirely upon Officer Beale's version of the facts, this Court concludes that these Officers are entitled to qualified immunity for their actions in entering Peterson's apartment without a warrant.

The Fourth Amendment to the Constitution also precludes an

illegal "seizure" of a citizen through the use of excessive force. U.S.C.A. Const. Amend. IV. The question to be answered in a qualified immunity context on excessive force claims is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989). Under the totality of the circumstances approach, the court is required to consider a balance of the factors of "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. If the force employed is deadly force, the officer's use of force is reasonable only "if a reasonable officer in Defendants' position would have had probable cause to believe that there was a threat of serious physical harm to themselves or to others." Estate of Larsen ex re. Sturdivan v. Murr, 511 F.3d 1255, 1260 (10th Cir. 2008); see also Tennessee v. Garner, 471 U.S. 1, 11 (1985). An important aspect of the inquiry is "whether the officers were in danger at the precise moment that they used force." Phillips v. James, 422 F.3d 1075, 1083 (10th Cir. 2005).

Considering only the actions of Officers Canada, Meeks, and

Vogt, this Court cannot conclude that they exhibited an objectively unreasonable level of force.  After entry, Peterson immediately physically confronted the Officers.  All evidence indicates that Peterson punched, grappled with, and attempted to disarm Officer Meeks while Officer Canada deployed a taser in an effort to end Peterson's altercation with Officers Meeks and Beale.

The second prong of the qualified immunity test requires that this Court determine that the law was clearly established at the time of the incident.  In evaluating whether the right was clearly established, the court considers whether the right was sufficiently clear that a reasonable government employee in the defendant's shoes would understand that what he or she violated that right.  Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1327 (10th Cir. 2007).  "A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be 'indisputable' and 'unquestioned.'"  Lobozzo v. Colo. Dept. of Corr., 429 Fed.Appx. 707, 710 (10th Cir. 2011).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  Currier v. Doran, 242 F.3d 905, 923 (10th Cir. 2001). see also Medina, 960 F.2d at 1498.

16

On the other hand, the Supreme Court has observed that it is generally not necessary to find a controlling decision declaring the "very action in question . . . unlawful." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1186 (10th Cir. 2001). A court should inquire "whether the law put officials on fair notice that the described conduct was unconstitutional" rather than engage in "a scavenger hunt for cases with precisely the same facts." Pierce v. Gilchrist, 359 F.3d 1279, 1298 (10th Cir. 2004).

To be clear, Officers Canada, Meeks, and Vogt did not employ the deadly force which resulted in Peterson's death. Only Officer Beale discharged his weapon into Peterson.[1]  Plaintiff's

---

[1]  To the extent Plaintiff asserts a claim of failure to intervene against Officers Canada, Meeks, and Vogt, such a claim would require a showing that (i) the Officers were present at the scene; (ii) the Officers witnessed another officer applying force; (iii) the application of force was such that any reasonable officer would recognize that the force being used was excessive under the circumstances; and (iv) the Officers had a reasonable opportunity to intercede to prevent the further application of excessive force, but failed to do so. Mick v. Brewer, 76 F.3d 1127, 1136 (10th Cir. 1996)).  The record does not indicate Officers Canada, Meeks, or Vogt had an opportunity to intervene with Officer Beale's application of deadly force or that the application of deadly force was objectively unreasonable under the circumstances.

protestations to the contrary, once Peterson was aware the entrants to his apartment were police officers, he could have ended the violent physical altercation and he certainly could have ended his attempts to unholster Officer Meeks' weapon. These actions went beyond mere efforts to defend himself and established him as the aggressor once the officers entered the apartment. This Court cannot conclude that the level of force employed by Officers Canada, Meeks, and Vogt violated clearly established law. These Officers are entitled to qualified immunity on the excessive force claim.

The remaining state law claims against Officers Canada, Meeks, and Vogt of wrongful death, intentional infliction of emotional distress, and assault and battery are based in the Oklahoma Governmental Tort Claims Act ("OGTCA"). However, "[i]n no instance in any such action shall an employee of the state or of a political subdivision of the state acting within the scope of employment be named as defendant; provided, however, such person may be named as defendant under alternative allegations that such person did not act within the scope of employment." Okla. Stat. Ann. tit. 51, § 153. An employee is acting within the "scope of employment" when the "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority including the

operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud." Okla. Stat. Ann. tit. 51, § 152.

Nothing in the record indicates to this Court that Officers Canada, Meeks, and Vogt were not acting in good faith or in the scope of their employment as city police officers. Based upon the information communicated to them by Officer Beale, they were acting appropriately to apprehend a suspect who had assaulted a police officer. As such is the case, the Officers are immune from liability under the claims based in the OGTCA and those claims are subject to dismissal.

### Additional Facts Relevant to the Summary Judgment Request of Officer Beale

Timmons stayed at Peterson's apartment "maybe three nights out of a week". (Timmons Depo., p. 27, ll. 22-23). She did not pay any of the bills but kept the apartment clean and put a couch and some tablecloths in the apartment. (Timmons Depo., p. 27, ll. 12-18). Peterson and Timmons were friends but she would not let him kiss her on the cheek or hold hands. (Timmons Depo., p. 19, ll. 5-8). In a "short amount of months", Timmons and Peterson became close friends. She started staying in the apartment because Peterson was arrested and the officers gave her his car keys and house keys. (Timmons Depo., p. 20, ll. 19-25). When

Peterson got out of jail, he told Timmons he was never at the apartment because of work and she could stay. (Timmons Depo., p. 22, ll. 7-9). Timmons found Peterson to be unhappy and "just really aggressive". (Timmons Depo., p. 29, ll. 6-9).

A few days before his death, Peterson forgot to give Timmons a key to the apartment. To gain access, Timmons "drop-kicked the door, and it busted a little bit out the bottom of the door on the inside." (Timmons Depo., p. 17, ll. 19-22). Timmons "pressed it back on there" but it was "pretty wobbly" and someone would be able to just push their way in. It still locked. (Timmons Depo. P. 19, ll. 12-25).

The night before the incident, Timmons brought a homeless man to the apartment from a Love's convenience store. Peterson objected but played video games with the homeless man all night. (Timmons Depo., p. 30, ll. 2-17). Timmons woke up early the next morning but she could not find any of her stuff in the apartment. (Timmons Depo., p. 30, ll. 21-25). Peterson "was pissy" at Timmons and walked her out of the apartment. She turned around to go back in the apartment because she did not have her stuff and Peterson shut the door. (Timmons Depo., p.31, ll. 4-8). Peterson would not let Timmons back in the apartment. He gave her $11.00 and her phone, which he had altered. (Timmons Depo., p. 31, ll. 17-24).

20

Timmons still had belongings bagged and boxed in Peterson's laundry room.  (Timmons Depo., p. 33, ll. 5-10).

Timmons threatened to call the police if Peterson did not return her belongings, stating, "I know you're scared of them, so you better not start with me.  Give me back my stuff."  (Timmons Depo., p. 34, ll. 18-20).  Timmons called the police because she knew Peterson was not going to give her stuff back to her. (Timmons Depo., p. 40, ll. 9-10).  She told the police what was going on and they agreed to send someone to help Timmons get her stuff.  (Timmons Depo., p. 40, ll. 15-16).

Officer Beale responded to the call.  His goal was to retrieve Timmons belongings.  (Beale Depo., p. 50, ll. 18-19).  Timmons knocked on the door to the apartment.  The door wobbled and Officer Beale told her it was open.  Timmons opened the door.  Officer Beale saw that trim and nails were sticking out around the door and he put his hand up to hold the trim so the nails would not hit them.  They then attempted to go into the apartment.  Officer Beale did not announce himself because he was with Timmons and believed that she stayed in the apartment.  (Beale Depo., p. 51, ll. 13-23).  Officer Beale began entering the apartment.  He testified that his forearm was holding the trim on the inside of the door when he heard stomping and the door slammed on his left

forearm.  (Beale Depo., p. 54, ll. 2-7).  Officer Beale put his right shoulder into the door to prevent further pressure on his forearm while trying to remove his arm from the doorway.  (Beale Depo., p. 54, ll. 10-12).[2]  Officer Beale then announced he was with the police department.  He shoved the door to get his forearm loose.  He announced that he was there trying to help Timmons get her stuff so she could leave and they could be done with the situation.  (Beale Depo., p. 55, ll. 1-8).  Officer Beale testified that Peterson yelled and threatened through the door. He asked Peterson to put Timmons' stuff at the back door but Peterson said he would not do it until Officer Beale left.  Officer Beale did not feel comfortable leaving Timmons at the apartment. He called for back up.  (Beale Depo., p. 56, ll. 21-25; p. 57, ll. 1-6).  Officer Beale unholstered his weapon because Peterson was threatening him, telling Officer Beale he would "shoot me like an intruder."  (Beale Depo., p. 58, ll. 21-25).

Timmons testified that she grabbed Officer Beale's arm and tried to stop him from entering the apartment.  She told him, "This has gone too far, and I'm sorry.  Like, I did not want this. He's not going to give me my stuff.  It's okay.  I'm going to go."

---

[2] Officer Beale did not complain about his arm when he went to the doctor.  He did not suffer any bruising and any injury to his arm was not reported in the medical records of his visit.  (Beale Depo., p. 69, ll. 7-18; p. 72, ll. 14-20).

(Timmons Depo., p. 46, ll. 16-25).  Timmons then ran to a tree.

Timmons provided a statement to the Oklahoma State Bureau of Investigation after the incident.  (Plaintiff's Response to Beale's Motion for Summary Judgment, Exh. 5).  Timmons indicated in that statement that she knocked on the door to Peterson's apartment, then Officer Beale knocked on the door.  The door wobbled and Officer Beale asked Timmons if the door was open.  She told him no, that it was just wobbly, and pushed in the door a little bit to show Officer Beale.  Peterson then slammed the door shut.  Timmons did not reference that Officer Beale's arm was caught in the door.  Timmons also does not state that Beale was holding the door frame up at the time the door was slammed.  Id.

Timmons testified that when she attempted to go through the door, Peterson hit the door, the door hit Timmons and Timmons hit Officer Beale.  Officer Beale was to the left of Timmons. (Timmons Depo., p. 48, ll. 22-24).  Timmons stated that Officer Beale's arm did not get caught in the door when Peterson slammed it shut.  (Timmons Depo., p. 49, ll. 5-9).  She further testified that Peterson did not let the door come open.  (Timmons Depo., p. 49, ll. 19-25).[3]

As previously stated, the primary bases for a warrantless

---

[3] No body camera footage was offered into evidence from Officer Beale's body camera.

entry into Peterson's apartment was the alleged assault upon Officer Beale by slamming his arm in the door and Peterson's flee into the apartment. A significant, material factual dispute precludes summary judgment on this claim, including the defense of qualified immunity.

Moreover, the facts are muddled and disputed as to whether Timmons was a resident or guest in Peterson's apartment such that she could give Officer Beale consent to enter the apartment. This Court recognizes the authority of Illinois v. Rodriguez, 497 U.S. 177 (1990) which stands for the proposition that "[t]he Constitution is no more violated when officers enter without a warrant because they reasonably (though erroneously) believe that the person who has consented to their entry is a resident of the premises, than it is violated when they enter without a warrant because they reasonably (though erroneously) believe they are in pursuit of a violent felon who is about to escape." Illinois v. Rodriguez, 497 U.S. 177, 186 (1990). The problem in the facts in this case lies in Timmons testimony that she attempted to pull Officer Beale away from entering the home, indicating that she did not consent to his entry into the apartment. Thus, even if it was reasonable to believe Timmons (erroneously or correctly) was a co-tenant with the capacity to give consent, the facts would lead to the conclusion that she did not give her acquiescence to Officer

Beale's entry.

As for the Fourth Amendment excessive force claim, the law was clearly established at the time of this incident that deadly force was only justified when a suspect "poses a significant threat of death or serious physical injury to the officer or others." Garner, 471 U.S. at 3. Despite Plaintiff's assertions that a dispute exists in the facts as to whether Peterson was attempting to unholster Officer Meeks' weapon, this Court finds overwhelming evidence that Peterson had his hand on the weapon at or near the time of the use of deadly force. Even considering Officer Beale's testimony that he could not see Peterson's hands when he fired but could see his arms near Officer Meeks' weapon and hearing Officer Meeks yell that Peterson was attempting to unholster his weapon, it was reasonable for Officer Beale to believe that Peterson posed a significant threat to himself and the other Officers present in the struggle.

The fact remains that the disputed claim that Officer Beale violated Peterson's constitutional right to be free of a warrantless search could be found to have lead to the death of Peterson and the resulting damages. Such disputes are in the exclusive province of the jury as factfinder and not appropriately resolved on summary judgment under the facts presented in this case.

As for the state law claims asserted against Officer Beale, the question under the OGTCA turns on whether he was acting within the scope of his employment at the time he entered Peterson's apartment. As noted, this entails a question of fact regarding consent to enter and the warrantless entry. "Whether a police officer's actions were taken within the scope of employment is a jury question unless only one reasonable conclusion can be drawn from the facts alleged." Tuffy's, Inc. v. City of Oklahoma City, 212 P.3d 1158, 1167 (Okla. 2009). Here, more than one conclusion can be drawn due to the dispute in the facts. As a result, dismissal of the state law claims is inappropriate on summary judgment.[4]

### Additional Facts Relevant to the Summary Judgment Request of the City of Ada

The City hires officers through East Central University's Collegiate Officer Program ("COPS"). According to Carl Allen, the current City of Ada Chief of Police and the deponent designated to speak for the City on issues of training of its officers, the COPS program takes students who have a concentration in criminal justice or human resource to enter the program as "basically the equivalency of an internship" with the same amount of hours as the

---

[4] It should be noted that Officer Beale only sought summary judgment on the state law claims based upon the immunity provided under the OGTCA. The merits of the various state law claims were not directly addressed.

Council of Law Enforcement Education and Training ("CLEET") basic course. (Allen Depo., p. 18, ll. 20-25; p. 19, ll. 1-6). CLEET recognizes the COPS program as the equivalency of CLEET's basic academy. (Allen Depo., p. 19, ll. 10-12). The City relies upon COPS being good training with that training recognized by CLEET. (Allen Depo., p. 20, ll. 24-25; p. 21, ll. 1-2). Additionally, the City depends upon CLEET certification training for situations such as entering dwellings in the officer meeting certain criteria to be employed as a law enforcement officer. (Allen Depo., p. 24, ll. 13-19). The City also provides field training with a Field Training Officer to train newly hired officers in areas such as mental health training and entering private residences. This training is also included in the minimum annual mandated training requirements for continuing education. (Allen Depo., p. 32, ll. 6-32; p. 33, ll. 1-4). The required field training is also set out in the City's Field Training Policy Manual. This manual includes benchmarks that have to be reached in order to pass through the field training program. (Allen Depo., p. 33, ll. 5-14). Officers with the City are required to do a minimum of 24 hours of continuing education every year as well as a couple of hours of mental health. This includes hands on training where officers do defensive tactics and use of force training. If any

issues arise, they are identified through field training.  (Allen
Depo., p. 25, ll. 4-14).

Officer Beale had COP certification which is equivalent to
CLEET certification.  (Allen Depo., p. 26, ll. 16-17).  He is also
CLEET certified and has received at least the minimum 24 hours of
continuing training each year he was an active police officer.
(Motion for Summary Judgment by Defendant City of Ada, Exh. No.
12).

While going through field training, one field training
officer out of three in 2016 found Officer Beale was not ready to
be released from the field training officer because of his "least
acceptable performance in the area of problem solving/decision
making.  (Plaintiff's Response to City of Ada's Motion for Summary
Judgment, Exh. No. 6).  Officer Beale was passed through the field
training program despite this recommendation.  Id.

Officer Beale received deadly force training while in the
COPS program, de-escalation training through CLEET, and dealing
with individuals experiencing emotional or mental health episodes
through the field training program and CLEET.  (Beale Depo. P. 29,
l. 25; p. 30, ll. 1-25).

Chief Allen agreed that Officer Beale's placing of his firearm
on the pillar outside of Peterson's apartment was a violation of

policy.   (Allen Depo., p. 49, l. 25; p. 50, ll. 1-5).   Officer Beale received additional training on firearms handling as a result of this violation.   (Allen Depo., p. 80, ll. 10-23).

Plaintiff also points to an incident from August of 2016 where Officer Beale fired ten shots at a vehicle as it was driving away. The other officer at the scene, Carl Dewayne Campbell, stated that Officer Beale's discharge of his weapon was not necessary, in his opinion.   (Campbell Depo., p. 13, ll. 18-22).   He attempted to stop Officer Beale by yelling "whoa."   (Campbell Depo., p. 18, ll. 20-25, p. 19, ll. 1-5).   To his knowledge, Officer Beale received training in discharging a weapon through the COPS program. (Campbell Depo., p. 19, ll. 20-25).

Municipal liability attaches under § 1983 when a constitutional violation results from a municipality's: (i) official policy; (ii) custom or practice; or (iii) failure to train employees.  City of Canton v. Harris, 489 U.S. 378, 380, 387, (1989); Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690-91 (1978).  Plaintiff has not identified a policy, custom, or practice which would be subject the City to municipal liability.   Instead, Plaintiff focuses almost exclusively upon the City's failure to train its officers in the use of deadly force and properly entering a dwelling.

To prevail on a claim that the City failed to train Officer Beale[5], a plaintiff must show that the municipality made a "deliberate or conscious choice" to not train its employees, and that the municipality was deliberately indifferent to its inhabitants' constitutional rights.  Manzanares v. Roosevelt Cnty. Adult Det. Ctr., 331 F. Supp. 3d 1260, 1300 (D.N.M. 2018) citing City of Canton v. Harris, 489 U.S. at 388-89.  Plaintiff must prove "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need" for additional training.  Ordinarily, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose [municipal] liability."  In the case where a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued.  Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996); see also City of Canton, Ohio v. Harris, 489 U.S. 378 (1989) ("Only where a failure

---

5 Since this Court has previously in this Opinion and Order found the Officer Canada, Meeks, and Vogt did not violate Peterson's constitutional rights and were entitled to qualified immunity, the analysis on Plaintiff's failure to train claim will focus exclusively on Officer Beale.

to train reflects a 'deliberate' or 'conscious' choice by an municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983").

Officer Beale received training through the COPS program and through CLEET certification. These programs offer training in the areas of use of force and entering a dwelling. Plaintiff appears to be contending that after the incident of firing on the vehicle, Officer Beale should have received additional training. Plaintiff also contends obliquely that Officer Beale's passing from the field training program against the recommendation of one trainer represented a training deficiency. These incidents occurred some three years before the use of deadly force in this case. Officer Beale indisputably continued to receive training through annual CLEET requirements. Therefore, it would be impossible for this Court to determine that the City made a deliberate choice to not train its officers to the detriment of its citizens' constitutional rights. Indeed, CLEET certification itself has been determined in this Court to support a finding of adequate training in this District. Jones v. Hacker, 2015 WL 1279363, at *8 n.7 (E.D. Okla. Mar. 20, 2015)("CLEET-certification supports summary judgment with respect to any argument that the City had a policy or custom of failing to train or supervise its officers." citing

<u>Rollins v. Town of Haskell, Okla.</u>, 2009 WL 3614784, at *10 (E.D.Okla. 2009)). Plaintiff finds fault in Chief Allen's inability to specifically identify the curriculum of CLEET and COPS training programs. Reliance upon these programs to provide training to the officer does not represent an abandonment of the City's obligation to train – rather, it indicates an effort to use these established training programs to meet its needs in insuring uniform training for its officers. This Court finds no constitutional deficiency in the City's training of Officer Beale such that municipal liability can be conferred.

Although Plaintiff also brings claims in the Complaint for negligent hiring and retention against the City, Plaintiff has offered no evidence to support these claims. Consequently, the City is entitled to summary judgment on these claims.

Plaintiff asserts claims against the City based in state law for wrongful death, assault and battery, and an Open Records Act violation. The City relies upon the briefing done in connection with the Officers' summary judgment motions.[6] In its summary judgment motion, the City defends each of these claims by essentially citing to the elements for each cause of action. Under these claims, the City contends it cannot be held liable because

---

[6] *See*, Defendant City of Ada's Reply Brief, p. 18.

"the actions of the Defendant Officers were not tortious" or the
City did not commit the acts necessary to prevail on these claims.
Because the state law claims asserted against Officer Beale survive
summary judgment due to a factual dispute on whether he acted
within the scope of his employment, whether Officer Beale's actions
were tortious remains at issue. "[A] municipality is liable for
the tortious acts of police officers committed within the scope of
employment as defined by the GTCA." Tuffy's, Inc. v. City of
Oklahoma City, 212 P.3d 1158, 1167 (Okla. 2009).[7] For now, the
state law claims against the City will survive until the actions
of Officer Beale are definitively determined.

Curiously, this Court finds little in the briefing on the
alleged violation of Open Records Act or on the claim for negligent
hiring, training, and retention. Faced with an incomplete record
on these subjects, these claims will survive as well.

IT IS THEREFORE ORDERED that Motion for Summary Judgment filed
by Defendants Officer Jussely Canada, Officer Michael Meeks, and
Officer Phillip Vogt (Docket Entry #93) is hereby **GRANTED** on all

---

[7] The different bases provided by the party Defendants on summary judgment
creates part of the conundrum for this Court. The individual officers moved
for summary judgment on the state law tort claims against them on the basis of
immunity which turns on the question of whether they acted in the scope of their
employment while the City addresses the merits of the claims against the
officers. If it is determined by a jury that Officer Beale acted within the
scope of his employment and that he improperly entered Peterson's apartment,
some or all of the state law tort claims may be determined to have merit. At
this stage of the proceedings, summary judgment is inappropriate.

claims. Officers Canada, Meeks, and Vogt are entitled to qualified immunity on the § 1983 claims asserted against them.

IT IS FURTHER ORDERED that the Motion for Summary Judgment filed by Defendant City of Ada (Docket Entry #94) is hereby **GRANTED** in part, in that summary judgment is entered in favor of the City on the § 1983 claim for the failure to train. The remainder of the Motion is hereby **DENIED**.

IT IS FURTHER ORDERED that the Motion for Summary Judgment filed by Defendant Officer Marcus Beale (Docket Entry #95) is hereby **GRANTED**, in part, on the § 1983 claim for excessive force but is **DENIED** as it pertains to the § 1983 claim for warrantless entry and the state law claims.

IT IS SO ORDERED this 13th day of October, 2023.


_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE

34